**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0804n.06
Filed: September 26, 2005

**Case No. 02-5369**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| FERNANDO R. VALDEZ, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE:  BATCHELDER and GRIFFIN, Circuit Judges; GADOLA,[*] District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.**  Defendant-Appellant Fernando R. Valdez appeals his conviction and sentence for aiding and abetting drug trafficking, arguing that the district court erred in denying his motion to suppress evidence.  For the reasons that follow, we will AFFIRM the decision of the district court.

**I.**

On March 8, 2001, Dan Moore, a Tennessee State Highway Patrol Trooper assigned to the Patrol's Criminal Interdiction Team (whose purpose is to interdict drug shipments), observed a Volkswagon with Utah license plates traveling down Interstate 40 in Jackson, Tennessee.  Trooper Moore became suspicious when, after pulling abreast of the Volkswagon, he drove beside it for

---

[*]The Honorable Paul V. Gadola, United States District Judge, Eastern District of Michigan, sitting by designation.

approximately three miles, during which time neither the driver nor the passenger ever looked over at him. Trooper Moore then dropped behind and to the left of the Volkswagon and from this vantage point observed the vehicle, which was traveling at 60 miles per hour, pull to within about twenty feet of the rear bumper of another vehicle and maintain that relative position for about fifteen seconds. Believing that the driver of the Volkswagon had violated Tennessee Code Annotated ("T.C.A.") § 55-8-124, which penalizes drivers who follow another vehicle too closely, Trooper Moore pulled the Volkswagon over.

Trooper Moore approached the stopped vehicle and asked the driver, who turned out to be Valdez, to produce a driver's license. Valdez immediately complied. Trooper Moore advised Valdez that Moore had pulled him over for following another vehicle too closely, and asked him who owned the car. Valdez responded that it belonged to someone named Roberto, whose last name Valdez did not know. Trooper Moore then separated Valdez from his passenger, Ascension Lopez (neither of whom speaks English fluently) and asked each of them questions, eliciting what Trooper Moore believed to be contradictory answers. Lopez said that they were driving from Mexico, but Valdez responded that they were coming from Los Angeles. Lopez told Trooper Moore that she had known Valdez for one year, but Valdez, when asked how long he had known Lopez, said "un año," which Trooper Moore mistakenly interpreted to mean "nine years." Trooper Moore also noted that there was no luggage in the passenger compartment of the car, which he believed to be unusual, given that Lopez and Valdez were traveling cross-country. At some point during this conversation—the record does not indicate precisely when—Trooper Moore had Valdez sit in the back of his police car and issued him a written warning for following another car too closely.

2

Given these circumstances and the fact that Valdez was beginning to show indications of stress—rubbing his arms and avoiding eye contact—Trooper Moore asked Valdez if he could search the vehicle. Valdez responded "no problem." After enlisting the help of two other officers, Trooper Moore performed a search of the entire vehicle, including the passenger compartment and the trunk, and finding nothing, released Coco, a drug-sniffing dog who was waiting in the back of Moore's squad car. From outside the vehicle, Coco alerted on the rear bumper, and from inside the passenger compartment, on the rear of the vehicle. The troopers took a close look at the rear bumper and observed that some of the screws were missing and that someone had sprayed expandable foam caulking between the bumper and the body of the vehicle. It appeared to the officers that someone had removed the bumper and had done a shoddy job reattaching it. Suspicious that drugs were being stored in the back bumper of the Volkswagon, the troopers asked Valdez to drive the vehicle to the police station, which was about a mile away, for a thorough inspection. Valdez complied, and while the car was at the station, the troopers removed the rear bumper and found a large quantity of cocaine stored inside it.

A federal grand jury indicted Lopez and Valdez for aiding and abetting each other in possessing with intent to distribute 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Both defendants pleaded not guilty to these charges and on May 18, 2001, Valdez moved to suppress the evidence obtained during the search of his car. After holding a hearing and viewing a video tape of the stop and the search (which was shot from a camera mounted on Trooper Moore's car), the district court entered an order denying the motion to suppress and later rendered findings of fact and conclusions of law from the bench. The case proceeded to trial, and both Lopez and Valdez made motions for acquittal at the conclusion of the government's case in chief. The

district court granted Lopez's motion but denied Valdez's. Valdez then withdrew his not guilty plea and entered a conditional plea of guilty, reserving his right to appeal the district court's denial of his motion to suppress evidence. The district court sentenced Valdez to 120 months' imprisonment to be followed by five years of supervised release. Valdez timely appealed.

**II.**

Valdez appeals the district court's denial of his motion to suppress evidence. "Factual findings made in consideration of a motion to suppress are reviewed for clear error, while the conclusions of law are reviewed de novo." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). We review the evidence "in the light most likely to support the district court's decision." *Id*. Valdez argues that the evidence seized from his car should be suppressed because Trooper Moore did not have a legitimate basis for stopping him or reasonable suspicion sufficient to justify detaining him. Valdez also argues that, in any event, the search of his car was unconstitutional. We will address each issue in turn.

The evidence seized from Valdez's vehicle must be suppressed if Trooper Moore lacked a legitimate basis for stopping the car. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." There is some confusion in this circuit over the legal standard governing traffic stops. In *Whren v. United States*, the Supreme Court wrote that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." 517 U.S. 806, 810 (1996); *see also United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (suppressing evidence where police lacked "probable cause" to stop a vehicle for failure to stay in the lane). This circuit has also held that a reasonable suspicion standard may apply to

4

traffic stops. *See Gaddis v. Redford Township*, 364 F.3d 763, 770 (6th Cir. 2004) (holding that reasonable suspicion standard governed stop for driving under the influence). That the officer who executed the stop had an ulterior law enforcement objective, such as to investigate possible drug activity, is constitutionally irrelevant. *Whren*, 517 U.S. at 813-14. Probable cause determinations are fact-dependent and will turn on what the officer knew at the time he made the stop. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc). Because Trooper Moore clearly had probable cause to stop Valdez's vehicle, it is unnecessary for us to resolve the conflict between the reasonable suspicion and probable cause standards in this time.

Trooper Moore testified that he stopped Valdez's car for following too closely in violation of T.C.A. § 55-8-124(a), which states "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Though the statute does not define "reasonable and prudent," the Tennessee drivers' manual provides that vehicles should maintain at least one car length for every ten miles per hour. *See United States v. Barnes*, No. 93-5060, 1994 WL 75932 at *4 n.1 (6th Cir. March 8, 1994). After viewing the video tape of the stop, the district court found that Valdez had pulled to within twenty feet of the vehicle in front of him. Trooper Moore testified that Valdez followed the other vehicle too closely for fifteen seconds. When an officer observes a vehicle traveling about 60 miles per hour pull to within twenty to thirty feet of another vehicle, that officer is justified in making a stop pursuant to T.C.A. § 55-8-124(a), regardless of whether the officer uses the stop as a pretense to investigate drug activity.

Valdez's argument that Trooper Moore did not have a legitimate basis for stopping him relies heavily on *Freeman*, which held that an isolated incident of a motor home weaving into the

5

emergency lane "for a few feet and an instant in time" did not establish probable cause to believe that a traffic violation had occurred. 209 F.3d at 466. The facts of this case are distinguishable from those in *Freeman*. Freeman's deviation lasted for about one-third of a second. Valdez, on the other hand, drove at about sixty miles per hour for about 15 seconds at a distance of 20-30 feet behind the car in front of him, conduct significantly more dangerous than Freeman's. Valdez's violation was not the sort of brief, isolated deviation that troubled the *Freeman* court.

That Trooper Moore had probable cause to stop Valdez's vehicle does not end our inquiry. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 125 S. Ct. 834, 837 (2005). "Once the purposes of the traffic stop [are] completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot." *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). "'[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000).

We conclude that Trooper Moore had a reasonable suspicion that Valdez was engaged in criminal activity, which justified his briefly detaining Valdez after writing the traffic ticket. Valdez, who claimed to have borrowed a car with Utah plates for a cross-country trip from Los Angeles to North Carolina, could not provide the owner's last name. Based on his reading of drug intelligence reports, Trooper Moore knew Los Angeles to be a major source of drugs and North Carolina to be a market. *See United States v. Cortez*, 449 U.S. 411, 416 (1981) (officer may draw upon his training

6

and experience in developing a reasonable suspicion). Trooper Moore also observed Valdez making furtive motions such as rubbing his arms and avoiding eye contact, which indicated to Moore that Valdez was very nervous.

The discrepancies between Lopez's and Valdez's stories also alerted Trooper Moore to the possibility of criminal activity. Trooper Moore understood Lopez to say that they were coming from Mexico and Valdez to say that their journey had begun in Los Angeles. While Lopez stated that she had known Valdez for one year, Trooper Moore understood Valdez to say that he had known Lopez for nine years. As Valdez's brief points out, Trooper Moore may have misunderstood Lopez, who tried to convey that *she* was from Mexico, and Valdez, who said that he had known his passenger for one year. But whether or not Trooper Moore misinterpreted Lopez and Valdez is of no constitutional significance, because the issue is whether the officer had a reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (reasonableness depends on the facts available to the officer at the moment of the seizure); *United States v. Quintana-Garcia,* 343 F.3d 1266, 1270 (10th Cir. 2003) ("The evaluation is made from the perspective of the reasonable *officer*, not the reasonable *person*"). Any inconsistency that the officer perceived—or misperceived—may contribute to his reasonable suspicion. We conclude that Trooper Moore had a reasonable, articulable suspicion justifying Valdez's detention.

The third and final issue is whether Trooper Moore was justified in searching Valdez's vehicle. An officer may conduct a warrantless search when the person with a privacy interest in the item to be searched gives a free and voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219-22 (1973). Whether a defendant's consent was voluntary, as opposed to being a product of duress or coercion, is a question of fact to be determined from the totality of the circumstances.

7

*United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988). Relevant factors include the defendant's age, intelligence, and education; whether he understands his constitutional rights; the length and nature of the detention; and the use of coercive or punishing conduct by the police. *Id*. The Fourth Amendment requires only that the police reasonably believe the search to be consensual. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990). The district court held that Valdez validly consented to a search of his vehicle, and we review this conclusion for clear error. *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999).

When Trooper Moore asked for permission to search Valdez's vehicle, Valdez promptly responded "no problem." Because Valdez's detention was brief (about thirty minutes) and the record contains no evidence that Trooper Moore engaged in punishing or coercive conduct, we are unable to say that the district court's conclusion was clearly erroneous.

Nor do we think that Valdez's tenuous grip on the English language rendered his consent involuntary. "In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police." *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999) (citing cases). The record establishes that Valdez could understand, and interact with, Trooper Moore. When asked to produce his license, Valdez readily complied. Valdez also appropriately responded to questions about his destination and his relationship with Lopez. These facts demonstrate that Valdez understood English well enough to give consent. *See United States v. Sanchez-Valderuten*, 11 F.3d 985, 991 (10th Cir. 1993) (defendant's understanding of the English language was sufficient to give voluntary consent where he produced a driver's licence immediately upon request and appropriately responded to the arresting officers' questions about travel plans). Indeed, the district court stated "it's clear to me

8

from watching this videotape that Mr. Valdez understands a good bit of English." This finding is not clearly erroneous. Because Valdez freely and voluntarily gave consent, the evidence obtained from the resulting search is admissible.

### III.

Valdez also argues that the district court committed reversible error when it allowed Trooper Moore to testify at the suppression hearing about the meaning of some of Valdez's Spanish-language responses to Trooper Moore's questions. Because Valdez failed to raise an objection before the trial court, we review his claim for plain error. *See United States v. Treadway*, 328 F.3d 878, 883 (6th Cir. 2003). Valdez must prove: that 1) an error occurred in the district court; 2) the error was plain; 3) the plain error affected his substantial rights; and 4) that the plain error affected the fairness, integrity, or public reputation of the judicial proceeding. *United States v. Oliver*, 397 F.3d 369, 375-76 (6th Cir. 2005).

The district court committed no error, much less a plain one, by playing the video tape of the stop and allowing Trooper Moore to narrate.[1] The record reveals that Trooper Moore did not attempt to translate Valdez's Spanish during the hearing but instead repeated the Spanish words that Valdez used. During those portions of the tape where Valdez spoke entire sentences in Spanish, Trooper Moore indicated that Valdez had said something in Spanish that he did not understand. It appears to us that Trooper Moore attempted to translate only one phrase: "un año." He only did so, however, after defense counsel asked him to interpret what Valdez was saying. In any event, any incorrect translations that Trooper Moore made did not affect Valdez's substantial rights. As stated

---

[1]We note that the district court retained interpreters to explain the proceedings to Valdez.

above, what Valdez actually said is not the issue. It is Trooper Moore's *perception* of what Valdez

said that is relevant to the reasonable suspicion analysis.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.