*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RONDRELL SANFORD (05-6489); TYSHAWN HILL (05-6500),

*Defendants-Appellants.*

Nos. 05-6489/6500

>

—————————

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 05-00037—R. Allan Edgar, District Judge.

Argued: September 22, 2006

Decided and Filed: February 6, 2007

Before: MERRITT, SUTTON, and GRIFFIN, Circuit Judges.

—————————

## COUNSEL

**ARGUED:** Mike A. Little, Chattanooga, Tennessee, for Appellants. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Mike A. Little, Chattanooga, Tennessee, W. Charles Lea, GARLAND, SAMUEL & LOEB, Atlanta, Georgia, for Appellants. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

GRIFFIN, J., delivered the opinion of the court, in which SUTTON, J., joined. MERRITT, J. (p. 6), delivered a separate dissenting opinion.

—————————

## OPINION

—————————

GRIFFIN, Circuit Judge. Defendants Tyshawn Hill and Rondrell Sanford appeal an order of the district court denying their motion to suppress evidence discovered after a traffic stop for following another vehicle more closely than is reasonable and prudent. TENN. CODE ANN. § 55-8-124. Specifically, defendants claim that the initial stop was not supported by probable cause or reasonable suspicion and the ensuing detention, search, and arrest were consequently tainted and unconstitutional.

1

For the reasons that follow, we affirm.

I.

On February 25, 2005, at approximately 4:30 p.m., McMinn County, Tennessee, Sheriff's Department Deputy Kenneth Pruitt was on a routine patrol driving north on Interstate 75. As Pruitt drove, he noticed a Buick Regal, driven by defendant Hill, traveling at about 65 miles-per-hour. The speed limit was 70 miles-per-hour. Pruitt continued to follow the Buick for two to three miles. At some point, the Buick came upon a tractor-trailer truck "going considerably slower" than the body of traffic. Hill began to change lanes to pass the truck but was unable to do so because of another vehicle driving in the left lane. As a result, Hill came in close proximity – approximately ten feet – to the truck in front of him. According to Pruitt, Hill "slammed on the brakes and backed off." After observing this incident, Pruitt activated his signal lights and stopped the Buick.

Pruitt approached the driver's side door and requested that Hill provide him with a driver's license, automobile registration, and proof of insurance. Hill provided Pruitt with a New York "learner's permit," the automobile registration, and an insurance document. At the time, Pruitt mistakenly believed that Hill had given him a driver's license. Simultaneously, Pruitt noticed approximately fifteen air fresheners hanging on the turn-signal lever on the steering column. He testified later that, based on prior experience, he was aware that air fresheners are often used to disguise the odor of narcotics.

Pruitt then asked the passenger, defendant Sanford, for identification, which he was unable to provide. After concluding that Sanford's inability to do so was suspicious, Pruitt requested that Hill exit the vehicle so he could question the two separately. Pruitt then asked questions of each defendant out of the earshot of the other. Hill and Pruitt discussed the reason for the traffic stop, and Hill explained that the vehicle in the fast lane had "cut him off." When Pruitt inquired about their travel plans, Hill explained that he had been driving back from Atlanta after watching an Atlanta Hawks NBA basketball game. He further stated that he did not know the passenger's name, but only knew him by his nickname, "T."

Pruitt then interviewed Sanford briefly. Sanford stated that he did not know the driver's name, but only knew him by his nickname, "T-Money." Contrary to Hill's explanation, Sanford stated that he did not have a nickname. Sanford recounted that they had been in Atlanta to find "women," and it had been "a couple of years" since he had last seen a basketball game.

After these inconsistent conversations, Pruitt returned to his patrol car to call another officer, Officer Johnson. Johnson, along with his narcotics-detection dog, arrived within minutes. Thereafter, Hill consented to a search of the vehicle, adding that "I have nothing to hide." Pruitt patted down Hill and found several cell phones and a pager, along with a roll of $20 bills. Pruitt then requested that Sanford exit the vehicle and patted him down. Upon feeling a bulge in a trouser pocket, Pruitt asked Sanford if the bulge was marijuana. Sanford responded affirmatively. Pruitt requested that both defendants stand at the front of the police vehicle while Johnson began a search of the Buick. When Johnson reached the door to the back seat of the Buick, Hill ran across the interstate.

The continued search of the vehicle revealed approximately eight kilograms of powder cocaine. Shortly after this discovery, police apprehended Hill.

Defendants Hill and Sanford were each named in a two-count indictment charging a conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846 and a substantive count of possession with the intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. In May 2005, defendants filed, and the district court denied, a motion to

suppress evidence arising from the traffic stop.  Defendants were convicted following a trial by jury, and, in September 2005, they timely appealed.

II.

The review of the denial or the grant of a motion to suppress is a mixed question of fact and law.  *United States v. Hurst*, 228 F.3d 751, 756 n.1 (6th Cir. 2000).  Thus, we review the district court's findings of fact for clear error and the district court's conclusions of law de novo.  *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006).  A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed."  *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).  The evidence must be viewed "in the light most likely to support the district court's decision."  *Dillard*, 438 F.3d at 680 (internal quotation marks and citations omitted).  Finally, "'[w]here there are two permissible views of the evidence' the district court's conclusions 'cannot be clearly erroneous.'"  *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

There is a degree of confusion in this circuit over the legal standard governing traffic stops.  *United States v. Valdez*, 147 F. App'x. 591, 594, 2005 WL 2374227 (6th Cir. Sept. 26, 2005) (unpublished).  In a relatively recent decision, this circuit held that the reasonable suspicion standard governs the legality of traffic stops when the suspected violation is a criminal offense rather than a civil infraction.  *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004) (holding that the reasonable suspicion standard governs a stop for driving under the influence).  There, this court purported to provide guidance to the district courts in this circuit by summarizing the state of this circuit's Fourth Amendment jurisprudence on vehicle stops, stating:

> Police may make an investigative stop of a vehicle when they have reasonable suspicion of an ongoing crime, whether it be a felony or misdemeanor, including drunk driving in jurisdictions where that is a criminal offense.  Police may also make a stop when they have reasonable suspicion of a completed felony, though not of a mere completed misdemeanor.
>
> Next, police may make a stop when they have probable cause to believe a civil traffic violation has occurred, even if the defendant raises a claim that the stop was pretextual.  Whether they may also stop a vehicle based on mere reasonable suspicion of a traffic violation is the subject of another conflict in our case law.  *Compare* [*Weaver v.*] *Shadoan*, 340 F.3d [398] at 407-08 (upholding stop where police had "reasonable suspicion" of a violation of vehicle registration and window tinting regulations) *with* [*United States v.*] *Freeman*, 209 F.3d [464] at 466 (invalidating stop where police lacked "probable cause" to stop vehicle for failure to stay in lane); and [*United States v.*] *Ferguson*, 8 F.3d [385] at 391 (stating in dictum that probable cause is required for a stop premised on traffic violation).

*Gaddis*, 364 F.3d at 771 n.6 (internal citations omitted).

The suspected violation in the present case is a misdemeanor traffic offense in violation of TENN. CODE ANN. § 55-8-124 and, therefore, by application of *Gaddis*, the stop should be analyzed under the standard of reasonable suspicion rather than probable cause.[1]  However, because we

---

[1]The definition of probable cause stems from the Supreme Court's explanation in *Carroll v. United States*, 267 U.S. 132, 162 (1925), which stated that officers had justification for the contested search and seizure when, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the

conclude that Pruitt had probable cause to stop Hill for a traffic violation, it is unnecessary for us to resolve this issue between the reasonable suspicion and probable cause standards at this time.

The statute at the center of the present controversy provides:

(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

TENN. CODE ANN. § 55-8-124.

Further, we have previously noted that, "[t]hough the statute does not define 'reasonable and prudent,' the Tennessee drivers' manual provides that vehicles should maintain at least one car length for every ten miles per hour." *Valdez*, 147 F. App'x at 594 (holding that police officer's observation of car following within twenty feet of car in front of it for fifteen seconds, in violation of the instant statute, gave rise to probable cause justifying vehicle stop).

The crux of this case is a question of law – whether Pruitt had probable cause or reasonable suspicion to believe that TENN. CODE ANN. § 55-8-124 was violated when defendants' vehicle was momentarily following another vehicle within a distance of ten feet while traveling 65 miles-per-hour and a third vehicle was passing in the passing lane. Pruitt's ulterior motivations, if any, are irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("[C]onstitutional reasonableness of traffic stops [does not] depend[ ] on the actual motivations of the individual officers involved . . . . Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.") This court reviews questions of law de novo.

The district court found credible the testimony of Pruitt. On appeal, defendants contend that the district court ignored the presence of the third vehicle in the passing lane, which, according to them, rendered Hill's actions reasonable. We conclude that, contrary to these assertions, the district court did not "ignore" the presence of the third vehicle, but recounted it in its analysis:

[B]oth Hill and Sanford argue that coming within ten feet of the rig does not constitute a traffic violation in these circumstances. Specifically, Hill only came so close to the rig because Hill was trying to pass the rig but was prevented by a van in the left lane. Officer Pruitt witnessed these circumstances but decided that they did not warrant coming within ten feet of the rig while traveling at 65 mph. The Court agrees.

In *Valdez*, this court examined the instant statute and concluded that following another vehicle within twenty to thirty feet of a car for fifteen seconds gave rise to sufficient probable cause to justify a traffic stop. *Valdez*, 147 F. App'x. at 595. As an unpublished decision, *Valdez* is not precedentially binding under the doctrine of stare decisis, but is considered by us for its persuasive value only. *See Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 n.3 (6th Cir. 1993); *Eyerman v. Mary Kay Cosmetics*, 967 F.2d 213, 218 (6th Cir. 1992). Defendants attempt to distinguish *Valdez* based on the fact that there, the car followed too closely for fifteen seconds, while in the present case, the situation was for only a moment. Also, defendants cite *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000), and its controversial conclusion that "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and *an*

automobile which they stopped and searched."

*instant in time* [does not] constitute[ ]" a traffic violation.**2** *Id.* We are not persuaded by defendants' arguments.

The distance between the vehicles here, approximately ten feet, is significantly less than the distance in *Valdez* of twenty to thirty feet. Although momentary, the danger is substantial when both vehicles are traveling at interstate speeds. This holding is consistent with the Tennessee courts' interpretation of the statute. In *Helms v. Weaver*, 770 S.W.2d 552 (Tenn. Ct. App. 1989), the court stated:

> In cases where the violation of T.C.A., § 55-8-124 was an issue, the reasonableness of the distance maintained by the operator of the following vehicle has been measured in terms of the operator's ability to make an emergency stop without striking the forward vehicle where the vehicles had been proceeding in the same direction.

*Id.* at 553. *Cf. United States v. Garrido*, 467 F.3d 971, 978 (6th Cir. 2006) (holding that officers had probable cause to believe that Garrido violated similar Kentucky traffic law, KY. REV. STAT. § 189.340(8)(b), when a heavy commercial vehicle approached a vehicle within "two to three cars lengths," or approximately thirty feet, when the statute mandated 250 feet).

We hold that Pruitt had probable cause to believe that a traffic violation had occurred and therefore was justified in making the initial stop of Hill's vehicle. Pruitt had probable cause to believe that defendant Hill was following the truck "more closely than is reasonable and prudent" when he came to within ten feet of the slow and steadily moving truck and had to "slam on his brakes" to avoid a rear-end collision.

### III.

Finally, defendants claim that Pruitt was not a credible witness. The district court specifically credited the testimony of Pruitt over defendants' allegations, stating that it found "no reason not to believe the officer as to what happened here." "Where there are two permissible views of the evidence" the conclusions of the district court "cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. Accordingly, we decline to hold that the district court clearly erred in deeming Pruitt credible.

### IV.

For the foregoing reasons, we affirm.

---

**2**The relevant inquiry is whether the police officer possessed probable cause or reasonable suspicion to believe that a traffic violation occurred, not whether a traffic violation in fact occurred.

_____

**DISSENT**

_____

MERRITT, Circuit Judge, dissenting.  The question in this case is whether Tennessee's statute on following too closely creates *a rule* for motorists or a broad *standard* giving police officers a wide discretion to interpret it as they see fit.  I do not believe that Officer Pruitt had probable cause or any reasonable ground to believe that a traffic offense had occurred under Tenn. Code Ann. § 55-8-124(a) (1998), which forbids a motorist from following too closely.  Rather, the Officer stopped this car with New York plates occupied by two black males a few minutes after the car had braked to avoid an accident.  Officer Pruitt stopped the car because he had a hunch, in my judgment, that the two men might have some drugs.

The language of the *Weaver* case — the Tennessee case quoted by the majority — seems on point.  In the instant case, Hill, the driver, complied with the statute which the case interprets to require simply that drivers "make an emergency stop without striking the forward vehicle where the vehicles had been proceeding in the same direction," *Ham v. Weaver*, 770 S.W.2d 552, 553 (Tenn. Ct. App. 1989).  Under this case, the Tennessee statute means that there is no violation if the following car can brake and avoid "striking the forward vehicle."

Although the Rule of the road found in this statute is not quite so narrow as rules regarding the speed limit or red lights, it is clear, as interpreted by Tennessee courts, that it was not breached here.  There was no basis in Tennessee law for the officer to go beyond the rule and exercise his own discretion even though Hill was able to brake and "avoid striking the forward vehicle where the vehicles had been proceeding in the same direction."  A broad, discretionary "reasonable suspicion" or "probable cause" standard does not fit such rules.  "Reasonable suspicion" of what?  What is it that the officer "suspects?"  There is no motive or intention or undisclosed fact to "suspect" or believe to be "probable."  The Fourth Amendment should apply the same libertarian principle here that would apply if the officer had stopped a driver for speeding who was going 68 in a 70 mile an hour zone.  This ability to avoid an accident by braking is what Tennessee law requires.  A crime does not occur every time a car speeds up to pass and then has to brake quickly in order to avoid an accident when cut off by another car coming up fast in the passing lane; nor does a crime occur when a motorist must brake quickly because the car in front brakes or slows quickly.  A great many drivers in America face this same problem everyday.  *See also State v. McCramey*, 2003 Tenn. Crim. App. Lexis 722 (Aug. 22, 2003).  In that case the Tennessee Court of Appeals suppressed the drug fruits of the same kind of claimed violation by the police of the same statute.  The drug dealer's car had to brake and stop quickly in order to avoid striking the slow moving car in front of it.  The Court held that the "drug dealer's actions in applying his brakes to avoid a collision did not give the police officer probable cause or reasonable suspicion to lawfully make the traffic stop." *Id.* at 6.