**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0841n.06
Filed: December 12, 2007

**No. 06-5297**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| ALVIN JEROME WALTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: BOGGS, Chief Judge, BATCHELDER, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Alvin Jerome Walton pleaded guilty to possessing, with intent to distribute, more than 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant's plea-based conviction was conditioned upon his right to appeal the order of the district court denying his motion to suppress.

Walton timely appeals, raising the same arguments rejected by the district court, that: (1) the traffic stop was not supported by probable cause; (2) a Tennessee statute justifying the stop, TENN. CODE ANN. § 55-8-124 (prohibiting drivers from following another vehicle more closely than is reasonable and prudent) was unconstitutionally vague; (3) his continued detention after the purposes of the initial stop were fulfilled was an unlawful seizure in violation of the Fourth Amendment; and

(4) his consent to the search of his vehicle was involuntary and/or revoked before the search. For the reasons stated by the district court in its memorandum opinion and for the reasons stated below, we affirm.

I.

The following findings of fact were made by District Court Judge Robert L. Echols at the conclusion of a suppression hearing:

> On October 21, 2003, Officer Shane Fisher of the 21st Judicial District Drug Task Force was parked in the median along I-40 when he observed a Chevrolet Suburban, traveling eastbound, immediately change lanes and pulling closely behind a tractor-trailer upon seeing the Officer's vehicle. Officer Fisher testified that the vehicle was "about a car length to a car and a half at most behind the tractor trailer." Based on the flow of traffic, Officer Fisher testified that the vehicle was traveling between the 55 miles per hour and 70 miles per hour. Officer Fisher decided to stop the vehicle because he believed that it was following too closely to the tractor-trailer in violation of Tennessee Code Annotated ("T.C.A.") § 55-8-124. Officer Fisher testified that a vehicle should maintain one vehicle length from the car traveling ahead of it, for every ten miles per hour of speed the vehicles are traveling in order to prevent accidents. As Officer Fisher pulled behind the Defendant's vehicle, he also noted that the Defendant's license plate was not clearly visible due to a dealer's tag which blocked the portion of the plate that lists the state in which the vehicle is registered.
>
> After stopping the vehicle at approximately 7:38 a.m., Officer Fisher approached the Suburban. The vehicle was driven by the Defendant. Larry White, the Defendant's uncle was seated in the front passenger seat. Officer Fisher informed the Defendant that he stopped his vehicle because the cover around the plate was blocking the tag and because he was following too closely to the tractor-trailer.
>
> Officer Fisher requested that the Defendant produce his driver's license, which the Defendant did. The Defendant was asked to step out of the vehicle and around to the rear of the vehicle. The Defendant told Officer Fisher that he was traveling to a fashion show in New York City. Officer Fisher asked the Defendant if he had been driving all night because his license indicated that he was a resident of Texas. The Defendant indicated that he and his uncle had taken turns driving throughout the night. The Defendant further stated that he planned to be in New York the next day

for the fashion shows and then travel to Philadelphia for a wedding on that following Saturday.

After speaking with the Defendant, Officer Fisher went to the passenger side of the vehicle to obtain the registration for the vehicle from Larry White. As Mr. White was looking for the vehicle's registration, Officer Fisher observed a 1/4 inch stack of cash in the glove box. When questioned about their travel plans, White told Officer Fisher that they were going to New York for the wedding of some of their friends named Larry Vaughn and Kim. White also informed Officer Fisher that he did not have a driver's license. This concerned Officer Fisher because the Defendant had indicated that he and his uncle had taken turns driving.

At approximately 7:48 a.m., Officer Fisher informed the Defendant that he was going to run a check on the Defendant's license. Officer Fisher then used his cell phone to call Blue Lightening Operations Center ("BLOC") and requested that the dispatcher conduct a criminal history, license and registration check on Defendant and an identification and criminal history check on the passenger, Larry White. Officer Fisher provided the dispatcher with his cell phone number in order for her to call him with the results of the checks. While waiting on the information from BLOC, Officer Fisher noticed that the Defendant appeared to be cold and asked him to wait in the patrol car.

While in the vehicle, the Defendant told Officer Fisher that his sister, Carla Blackmon, was getting married. Officer Fisher asked the Defendant did he travel with any large amounts of money and the Defendant replied no. Officer Fisher, a certified K-9 handler, then decided to run his drug detector dog, Heidi, around the Defendant's vehicle. The dog did not alert to the presence of drugs.

At approximately 7:50:32 a.m., Officer Fisher received a call from the BLOC dispatcher and the call lasted until 7:52:44 a.m. According to Officer Fisher, the BLOC dispatcher told him that the Defendant had been arrested for conspiracy to distribute cocaine and other seizures had been connected to the Defendant, and he was usually armed. Officer Fisher testified that the dispatcher did not inform him, at this time, that the Defendant's license and registration had come up clear. The BLOC dispatcher testified that she has no independent recollection of the information she provided to Officer Fisher. BLOC call records indicate that the only information available to the dispatcher at 7:50 a.m., was that the Defendant's license and registration were clear. Accordingly the Court finds that the BLOC dispatcher only informed Officer Fisher that the Defendant's driver's license and registration were clear.

After receiving the call, Officer Fisher explained to the Defendant that the BLOC dispatcher was having difficulty verifying the vehicle registration. At approximately 7:54:02 a.m., Officer Fisher asked the Defendant for consent to search the vehicle, explaining to the Defendant that he did not have to agree to the search. The Defendant stated that he did not have a problem with the officer searching the vehicle and consented to the search. Officer Fisher, having established that the Defendant could read and write, provided the Defendant with a written consent to search form. After reading the form, the Defendant signed the form and returned it to Officer Fisher.

Officer Fisher began searching the Defendant's vehicle and was assisted by Officer Chris Utley, who had arrived at the scene. As Officers Fisher and Utley started to search the vehicle, Officer Fisher received a second call from BLOC. The BLOC dispatcher informed Officer Fisher that Defendant's criminal history included a drug conspiracy charge of which the Defendant was acquitted and weapons violations of which he was convicted. The dispatcher also informed Officer Fisher that Larry White's criminal history included assault with deadly weapon, carrying a weapon, aggravated robbery, and marijuana charges, to all of which he pled guilty. After Officer Fisher completed this call, he informed Officer Utley of the Defendant's criminal history and they continued their search of the Defendant's vehicle.

In the rear of the Suburban, Officer Fisher found five boxes that were gift wrapped. Officer Fisher told Officer Utley that the boxes were heavy and that he believed they contained cocaine. Officer Fisher additionally testified that four of the boxes were similar in size and that none of the boxes gave much, when the sides were mashed. Officer Utley removed one of the boxes from the vehicle and placed it on the ground in front of Officer's [sic] Fisher patrol car. When questioned about the contents of the boxes, the Defendant stated that they contained computers and dishes. In addition to the gift-wrapped boxes, the officers also found between $1,500 and $1,600 in cash over the visor, which Officer Fisher had previously observed in the glove box.

Officer Fisher asked for permission to open the packages, but the Defendant refused to give the officers permission to open the packages. Officer Fisher informed the Defendant that he was going to run his dog on the packages because he was suspicious about the packages. The Defendant replied, "do whatever you got to do, sir." When officer Fisher again expressed his concerns about the packages, the Defendant said, "you can put your dog on it, sir."

Officer Fisher then ran Heidi around one of the two packages that had been removed from the vehicle and Heidi gave her trained final response to the presence of a drug

odor by scratching the ground beside the box.  After Heidi alerted to the box, Officer Utley removed some of the other boxes and placed them next to the box to which Heidi had previously alerted.  Heidi was run on the packages again and gave a trained final response by scratching the box that she alerted to the first time she did a sweep.  After Heidi alerted to the box a second time, Officer Fisher opened the box and discovered it contained cocaine.  A search of the other packages revealed additional quantities of cocaine.

Dist. Ct. Mem. Op. at 2-7.

## II.

The grant or denial of a motion to suppress is a mixed question of fact and law.  *United States v. Hurst*, 228 F.3d 751, 756 n.1 (6th Cir. 2000).  On appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo.  *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006).  A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed."  *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).  The evidence must be viewed "in the light most likely to support the district court's decision."  *Dillard*, 438 F.3d at 680 (internal quotation marks and citations omitted).  Finally, "'where there are two permissible views of the evidence' the district court's conclusions 'cannot be clearly erroneous.'"  *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

## III.

Regarding issues one, two, and four, we affirm for the reasons stated by the district court. We also rely upon our recent decision, *United States v. Sanford*, 476 F.3d 391 (6th Cir. 2007), in

which we upheld a probable cause ruling for "following more closely than is reasonable and prudent" in violation of TENN. CODE ANN. § 55-8-124. In *Sanford*, 476 F.3d at 395, we stated:

> "[t]hough the statute does not define 'reasonable and prudent,' the Tennessee drivers' manual provides that vehicles should maintain at least one car length for every ten miles per hour." (Quoting with approval, *United States v. Valdez*, 147 F. App'x 591, 594 (6th Cir. 2005).

We conclude that a panel opinion further addressing these issues would serve no jurisprudential purpose.

IV.

The only significant issue raised in this appeal is whether "[o]nce Officer Fisher learned Mr. Walton's driver's license and vehicle registration were valid, was the continued seizure of Walton and his vehicle a violation of Mr. Walton's rights against unreasonable searches and seizures under the Fourth Amendment?"

During this lawful traffic stop, Officer Fisher spoke with his dispatcher from 7:50:32 a.m. to 7:52:44 a.m. In this call, Fisher was advised that defendant's license and registration "were clear." One minute and eighteen seconds later, Fisher asked defendant for permission to search the automobile. Defendant voluntarily agreed to the search, although Fisher falsely told him that the police were "having difficulty verifying the vehicle['s] registration."

The district court held that the additional one minute and eighteen second detention was not an unreasonable seizure in violation of the Fourth Amendment. We agree.

Any analysis of a claimed Fourth Amendment violation must focus on the objective reasonableness of the police officer's actions, not a bright-line rule, "in recognition of the 'endless

variations in the facts and circumstances' implicating the Fourth Amendment." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Royer*, 460 U.S. 491, 506 (1983)). "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). A lawful traffic stop "may become an impermissible 'seizure if it occurs over an unreasonable period of time or under unreasonable circumstances.'" *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (quoting *United States v. Orsolini*, 300 F.3d 724, 729-30 (6th Cir. 2002)).

Ultimately, we "must be mindful of the police officer's duty to conduct the stop with the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time . . . ." *Hill*, 195 F.3d at 270 (citations omitted). In this case, like *Hill*, we conclude that the brief detention was a reasonable response to the totality of the circumstances. *See also United States v. Bradshaw*, 102 F.3d 204, 212 & n.18 (6th Cir. 1996). In forming his reasonable suspicions, Officer Fisher "was entitled to assess the circumstances and defendants in light of his experience as a police officer and his knowledge of drug courier activity." *Hill*, 195 F.3d at 270 (citing *United States v. Cortez*, 449 U.S. 411, 416 (1981)). A totality of the circumstances analysis prohibits us from discounting certain factors merely because, separately, they could potentially have "an innocent explanation." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

Recently, in *United States v. Garrido*, 467 F.3d 971 (6th Cir. 2006), we surveyed our

previous decisions in this area:

> *Compare United States v. Richardson*, 385 F.3d 625, 630-31 (6th Cir. 2004) (concluding that the motorists' nervousness, their allegedly conflicting explanations of travel plans, and the movement of one from the back to the driver's seat did not suffice to create a reasonable suspicion); [*United States v.*] *Townsend*, 305 F.3d [537] at 542-45 (finding that ten factors, including dubious travel plans, three cell phones in the car, and the driver's history of weapons offenses, did not rise to the level of a reasonable suspicion); *and* [*United States v.*] *Smith*, 263 F.3d [571] at 588-94 (concluding that nine factors, including the stoned appearance of one vehicle occupant, food wrappers in the car, and the nervousness of the occupants, did not establish a reasonable suspicion); *with United States v. Davis*, 430 F.3d 345, 355-56 (6th Cir. 2005) (holding that a driver's meeting with a known drug dealer justified continued detention until a drug-sniffing dog could arrive, but that additional detention after the dog failed to alert was unreasonable); [*United States v.*] *Hill*, 195 F.3d [258] at 270-73 (concluding that eight factors, including a dubious explanation for a cross-country trip, nervousness, and the cash rental of a U-Haul, justified continued detention); *and United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc) (holding that eight factors, including the lack of registration and any proof of insurance, and the nervousness and criminal record of drug violations of the driver, sufficed to justify continued detention).

*Garrido*, 467 F.3d at 982.

> *See also United States v. Ellis*, 497 F.3d 606, 614 (6th Cir. 2007), in which we held:

> reasonable suspicion existed for the further brief detention of an additional eight minutes and twenty-one seconds (3:36:39 to 3:45) based on the combination of the following factors: (1) Trooper Topp's inability to confirm Ellis's false alias; (2) Daugherty's response of "not that he knew of" to Topp's question of whether the vehicle contained drugs or anything illegal; (3) Daugherty's lack of knowledge of defendant's name; (4) Daugherty's lack of knowledge where he had been in Cleveland; (5) Ellis's lack of knowledge of his social security number; and (6) the discrepancy regarding how much money Ellis paid Daugherty for the trip.

In the present case, after the purposes of the traffic stop were fulfilled, the brief, continued detention was justified based on reasonable suspicion of criminal activity. From an objective standpoint, we conclude that the combination of the following factors established reasonable suspicion: (1) Officer Fisher observed a "1/4 inch stack of cash in the glove box;" (2) defendant denied traveling "with any large amounts of money;" (3) defendant and his passenger gave conflicting explanations of their travel plans: defendant told Officer Fisher that they were on their way to a fashion show in New York and then to the wedding of his sister, Carla, in Philadelphia, but the passenger (defendant's uncle) said they were going to New York to attend the wedding of some friends, Larry Vaugh and Kim; and (4) defendant's uncle did not have a driver's license, although defendant said he "had taken turns driving."

In light of the totality of the circumstances, we hold that reasonable suspicion existed to detain defendant during the brief time period after defendant's license and registration "had come up clear." Defendant's right to be protected "against *unreasonable* searches and seizures," U.S. CONST. amend. IV (emphasis added), was not violated, and, thus, the district court did not err in denying defendant's motion to suppress.

V.

For these reasons, we affirm the order of the district court.

BOGGS, Chief Judge, dissenting. The first question at issue in this case is whether a seizure, initially reasonable, can remain so when the officer has concluded the lawful business of the seizure *and* lies to the person that he is detaining as to his authority to continue the detention. I think the answer to that question is no. Second, when an officer is continuing to detain a citizen under false pretenses, does that render a subsequent consent to search during that detention, and the prolonged continuation of that search while the person is still being detained under false pretenses, an invalid consent, I think the answer to that question is yes. Finally, did the officer here even have "reasonable suspicion" to continue the detention?

As with many search cases, we must examine the scenario of events in discrete phases. I agree with the court that the initial stop for "following too closely" is valid, in light of the district judge's factual findings. However, we begin to part company at the time when, as the district court found and our court agrees, the officer had concluded his legitimate business and deliberately chose to lie to the driver as to the basis for his continued detention. At this point, any continued detention could not be on account of the driver's license check, and Officer Fisher never claimed that the detention was necessary to finish any additional business concerning the stop (for which no ticket was ever issued). Rather, the continued detention was solely pursuant to the arbitrary abuse of the officer's power. It is simply plain common sense that any driver's reaction (let alone this driver's reaction) to a request for search might well be quite different in a circumstance in which he is told that he is free to go, or will be free as soon as any additional paperwork is done, or simply has his license returned and is let out of the police car, as opposed to the circumstance when the officer has

told you that you will continue to be detained (indefinitely, for all that appears).[1]  In fact, the

detention under false pretenses continued for nearly an hour before the drugs were found.  Officer

Fisher testified that Walton was not free to go.

The court focuses on the fact that at the time the officer told the lie, there were several

circumstances that could be taken as amounting to "reasonable suspension" that criminal activity was

afoot.  However, this was not a case where reasonable suspicion was used to initiate a *Terry* stop,

pursuant to the strictures on such a stop (brief time, officer self-protection, inquiry into suspicious

circumstances).  Instead, the *Terry* stop had already been initiated by the traffic detention, the officer-

protection functions had already been concluded by an initial pat-down and the placing of the driver

in the patrol car, with no means of egress, and any remaining reasonable suspicion does not justify

continued detention.

The items identified at paragraph 32 of the majority opinion do not, in my opinion, create the

requisite "reasonable suspicion" to continue the lawful detention that began with the traffic stop.

This is particularly true when you add in the fact that, in the words of *United States v. Davis*, this

search "occurs over an unreasonable period of time or under unreasonable circumstances."  *See* 430

F.3d 345, 354 (6th Cir. 2005).  In my view, falsely informing the defendant that his detention will

be indefinitely prolonged is an unreasonable circumstance, and continuing the detention for up to

---

[1]While only marginally relevant, I note that this particular officer has been cited for untruthfulness in the past, so that his tactic in dealing with this driver cannot be considered inadvertent or mistaken.  *See United States v. Martinez*, 356 F. Supp. 2d. 856, 869-70 (M.D. Tenn. 2005).

an hour while continuing the deceit as to the circumstances of the detention is an unreasonable period of time.

In any event, the suspicious circumstances basically boil down to three: (1) An alleged discrepancy between Walton's denial of any "large amounts of money" "like several thousand dollars or more" and Fisher's observation of a "1/4 inch stack of cash." Obviously, if the stack was in thousand-dollar bills it would be a large amount. If it was in one-dollar bills it would not be. The officer had no further information as to the denominations of this "stash" (which is no thicker than the $166 I now have in my wallet). It turned out to be less than $1600, certainly short of "several thousand dollars or more." (2) An admission that the uncle did not have a driver's license, and yet was driving. While this could conceivably be taken as a admission of a traffic violation (which may well have taken place in another state), I do not see that it creates any suspicion of a completely separate crime. (3) The alleged discrepancy between (a) Walton's stating that he was going to a fashion show in New York and then to a wedding in Philadelphia and (b) White's saying that he was going to a wedding, and then agreeing with the officer's leading question that the wedding was in New York. Fisher admitted that he thought New York and Philadelphia were very distant, which (mistakenly) added to his suspicion.

While, in hindsight, this alleged contradiction may betray an inability to keep straight on a concocted story, this discrepancy, even when taken in conjunction with the matters analyzed above,

does not, in my view, create a "reasonable suspicion" of specific criminal activity being afoot, nor make the continued detention reasonable, in light of all the circumstances.[2]

Finally, the reasonableness of any suspicion must take into account anything that detracts from this suspicion. In this case, unlike a number of comparable cases, a drug dog had already been run around the car, with negative results.[3] In addition, at the time the court finds Fisher's suspicions "reasonable," the license and any other checks done at that time had come back negative. Fisher's testimony in court that he had information as to Walton's criminal past <u>at that</u> <u>time</u> was specifically refuted by the documentary record and discounted by the district judge. Thus, the officer's "suspicion" was particularly unreasonable in that at least one of its major pillars was concocted, and the others were, as shown above, quite shaky.

---

[2]This case is quite similar to *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004), in which our court considered a case involving the very same officer and remarkably similar allegations of reasonable suspicion based upon allegedly contradictory stories and peripheral considerations such as minor nervousness and movement within the car. *See id*. at 630-31. These cases betray a pattern of this officer "fishing" for reasonable suspicion by soliciting information that he can subject to an extremely loose standard of contradiction and then combine with any other available information to claim "reasonable suspicion." While in some, perhaps even many, cases these tactics are permissible and lead to adequate suspicion of criminality, *see, e.g.*, *United States v. Hill*, 195 F.3d 258 (6th Cir. 1999) (extreme contradiction of stories, extreme implausibility of reason for trip, and extreme nervousness, among other factors), such suspicion must be judged on its reasonableness *ex ante*, not on the fact that, in any case that reaches us, drugs will have been found.

[3]In *Davis, supra*, a negative drug-dog run was the major reason for our court finding no further reasonable suspicion, despite much more suspicious circumstances than are present here. *See* 430 F.3d at 354-56.

In hindsight, Officer Fisher's deductions and actions (supported by, in my view, nothing more than a "hunch") were brilliant. They did ultimately discover a large quantity of drugs. However, in my view that cannot overcome the constitutional command that searches be "reasonable," which this search and detention, based on hunches and lies, definitely transgressed. I therefore respectfully dissent.