NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0400n.06
No. 17-1905

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 09, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| WINSTON OWENS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: GIBBONS, THAPAR, and LARSEN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Winston Owens appeals the district court's denial of his motion to suppress evidence, arguing that the search warrant for his residence was issued in error. Because there was probable cause to support the issuance of the search warrant, we affirm the district court.

I.

On January 4, 2017, the Kalamazoo Valley Enforcement Team (KVET) applied for a search warrant for Owens's residence. In its affidavit, KVET provided (1) information regarding Owens's prior drug convictions; (2) tips from previous informants about Owens's role in drug trafficking dating from December 2013, September 2014, and February 2015; and (3) information from a current anonymous informant. After a KVET officer came into contact with the current informant in possession of over a pound of methamphetamine on December 27, 2016, the

informant told KVET investigators that he had obtained the drugs from Owens and that Owens had five pounds of methamphetamine at his residence two to three weeks before the informant's communication with KVET. The informant also stated that Owens charged $11,200 for a pound of methamphetamine and that he still owed Owens money for the two pounds of drugs he had received from Owens before Owens left for a trip to Florida. The informant provided KVET with Owens's address and phone number. The informant told KVET that every time he had received methamphetamine from Owens—the informant said he had been purchasing methamphetamine from Owens since August 2016—the transaction occurred at Owens's residence.

The warrant described how KVET investigators arranged a controlled money exchange using the current informant. For this exchange, the informant contacted Owens to arrange partial payment of the drug debt he owed Owens. KVET gave the informant $11,200 and equipped him with audio and video recording devices. At the meeting, the informant asked Owens how much he still owed, and Owens responded that the informant owed him $31,700, explaining that "it was 93 before I left and I gave you two more." DE 13-1, Aff. For Search Warrant, Page ID 47. Owens then accepted the $11,200 payment and told the informant that he still owed $20,500. Within 24 hours of this exchange, KVET applied for the search warrant.

With this information, the magistrate judge granted a search warrant, and KVET searched Owens's residence that same day. During the search, officers found a variety of drugs, drug trafficking paraphernalia, and $23,342 in cash. Owens moved to suppress all evidence seized from his residence, arguing that the search warrant was not supported by probable cause. After holding a hearing, the district court denied the motion. In concluding that the warrant was supported by probable cause, the district court relied mainly on the newest informant's statements, concluding that there was sufficient corroborating evidence from the controlled money exchange to trust the

2

informant. The court gave little weight to Owens's criminal history and no weight to the stale tips from December 2013, September 2014, and February 2015. The district court further concluded that, even if probable cause was lacking, the good faith exception to suppression applied.

## II.

In reviewing a denial of a motion to suppress evidence, "we review the district court's findings of fact under the clear-error standard and its conclusions of law de novo." *United States v. Quinney*, 583 F.3d 891, 893 (6th Cir. 2009). "A factual finding is clearly erroneous when . . . the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (citation and quotation marks omitted). If there are two permissible views of the evidence, then that factual finding is not clearly erroneous. *Id.* The evidence is viewed "in the light most likely to support the district court's decision." *Id.* (citation omitted). The existence of probable cause and the applicability of the good faith exception are both questions of law that this court reviews de novo. *See United States v. Williams*, 544 F.3d 683, 685 (6th Cir. 2008); *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).

## A.

Under the Fourth amendment, "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause requires that there be a "a fair probability that contraband or evidence of a crime will be found in a particular place." *Williams*, 544 F.3d at 686 (quoting *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)). In making a probable cause determination, a magistrate judge makes a "practical, common-sense decision . . . given all the circumstances set forth in the affidavit." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable

cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting

*Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014)).

Here, Owens's main contention is that there was insufficient cause to support the warrant because the affidavit failed to include information about the reliability of the informant on which it relied.[1]  When a search warrant affidavit includes a tip from an informant, the court "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances."  *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).  There are two main ways to establish the reliability of an informant's tip: (1) through the informant's prior track record, *see United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required."); or (2) through corroborating information, *see United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information."); *see also Frazier*, 423 F.3d at 532.  Here, the informant was anonymous, and the affidavit provided no information on the informant's prior track record.  Thus, probable cause hinges on whether there was sufficient corroboration of the tip.

Here, Owens's statements during the controlled money exchange sufficiently corroborated the informant's tip to create probable cause.  The informant stated that Owens charged $11,200 for a pound of methamphetamine and that he still owed Owens for two pounds that he had previously obtained.  This information was confirmed as accurate in the controlled money

---

[1] Owens also argues that his criminal history was minimally relevant and that the old tips were stale.  However, in denying Owens's motion to suppress, the district court agreed on both points, explicitly giving little weight to Owens's criminal history and not relying on the stale tips at all.  We therefore do not address these arguments in detail.

exchange: Owens explicitly stated that the informant owed him $31,700, clarifying that "it was 93 before I left and I gave you two more." DE 13-1, Aff. For Search Warrant, Page ID 47. First, this statement confirms the informant's story that he had purchased two pounds of methamphetamine from Owens. Second, it corroborates the informant's claim that he owed Owens payment for the drugs. Lastly, the math confirms that Owens was charging $11,200 a pound for methamphetamine, as the informant had reported—($31,700 - $9,300) / 2 = $11,200. All this shows that the informant's information was correct and reliable, and Owens points to no statement by the informant that was shown to be inaccurate.

Owens argues that because there was no explicit discussion of drugs in the controlled money exchange, the conversation did not corroborate the informant's statements, as the payment could have been made for a number of reasons. However, at the probable cause inquiry stage, the court requires only information in the affidavit from which the magistrate judge could conclude "from the totality of the circumstances, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citation and internal quotation marks omitted). Here, despite no explicit discussion of drugs, put in the context of the information already provided by the informant, there was a strong probability that Owens's statements referred to a previous drug transaction with the informant. Moreover, this court defers greatly to a magistrate judge's reading of the facts when issuing a warrant. *See United States v. Terry*, 522 F.3d 645, 647–48 (6th Cir. 2008). It was completely reasonable for the magistrate judge to conclude that the conversation between Owens and the informant pertained to drugs even though drugs were not explicitly mentioned. This sufficiently established the

informant's reliability, substantiating the information he provided. Accordingly, we find that there was sufficient cause for the warrant and affirm the district court's denial of the motion to suppress.

B.

Even were we to find insufficient corroboration of the informant's tip to demonstrate probable cause, the good faith exception to suppression would apply here. This exception holds that evidence should not be suppressed when it was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). While "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search[,]' . . . it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922–23 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)).

Here, Owens argues that the good faith exception does not apply because the affidavit was "bare bones"—in other words, the affidavit failed to provide a basis to determine probable cause existed, and the officers were therefore unreasonable in relying on the resulting warrant. However, the warrant had particularized facts corroborating the informant's tip about Owens having drugs at his residence that would allow an officer acting in good faith to reasonably rely on the warrant. *See United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013). Owens cites two cases to support his argument that the affidavit was "bare bones": *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006) and *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006). Both cases are easily distinguishable. First, in *Hython*, the court held that the good faith exception did not apply when a warrant was issued based solely on a modified controlled buy that was not carried out by an informant but by a third party contacted through the informant. 443 F.3d at 485–86, 489. We emphasized in *Hython* that reliance on that warrant was unreasonable because the affidavit did not

even state when the controlled buy occurred. *Id.* at 486 ("More importantly, the affidavit offers no clue as to when this single controlled buy took place."). In contrast, here, the KVET officers arranged and observed the controlled money exchange between Owens and the principal informant first hand, and this exchange occurred within twenty-four hours of the warrant application and issuance. Thus, *Hython*'s facts are not analogous to what happened here. The facts in *McPhearson* are also very different from those in the instant case. In *McPhearson*, we found that the good faith exception did not apply when the only connection in the affidavit between the searched residence and the alleged drug trafficking crime was the fact that the defendant was arrested at his residence and the police had found some crack cocaine in his pocket. 469 F.3d at 526–27. We held that this was insufficient to justify a nexus between the place to be searched and the evidence to be sought. *Id.* Here, there is a sufficient nexus between the evidence sought and the place searched because the informant said that Owens had drugs at his residence, and the informant's story was corroborated through the controlled money exchange. Thus, *McPhearson* also does not help Owens's argument.

Lastly, Owens argues that the good faith exception should not apply because the officers presented misleading information about the nature of the controlled money exchange and thus acted in bad faith. Specifically, Owens points out that the initial purpose of the controlled money exchange was to have the informant purchase more drugs from Owens, and, thus, when no additional drugs were given to the informant, the exchange was a failure. Owens argues that the government's affidavit tried to spin the exchange as a success and was therefore misleading. But the warrant application was not misleading—indeed, the affidavit candidly states that the meeting had been set up "with the hopes of [the informant] being given more methamphetamine." DE 13-1, Aff. For Search Warrant, Page ID 46. Furthermore, the warrant affidavit is clear that no drugs

7

were exchanged in the meeting.  Thus, the magistrate judge was not misled in any way.  The good

faith exception to suppression would apply here even if the warrant lacked probable cause.

III.

Accordingly, we affirm the district court's denial of Owens's motion to suppress.