IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 19, 2016 Session

## STATE OF TENNESSEE v. BRADLEY DARRIN WILLIAMS

**Appeal from the Circuit Court for Williamson County**
**No. 1-CR-118429      Joseph A. Woodruff, Judge**

_____

**No. M2015-00946-CCA-R3-CD – Filed July 26, 2016**

_____

A Williamson County grand jury indicted the Defendant, Bradley Darrin Williams, for one count of driving under the influence ("DUI") and one count of DUI per se. The Defendant filed a pretrial motion to suppress the evidence obtained as a result of his traffic stop. The trial court denied the Defendant's motion, and the Defendant pleaded guilty to the two counts of DUI. The trial court merged the convictions and sentenced the Defendant to eleven months and twenty-nine days, to be served on probation after the service of seven days in confinement. The Defendant reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the trial court erred when it denied his motion to suppress because the officer did not have reasonable suspicion justifying the stop. After review, we conclude that the traffic stop was lawful and thus, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Matthew D. Dunn, Brentwood, Tennessee, for the appellant, Bradley Darrin Williams.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Counsel; Kim R. Helper, District Attorney General; and Carlin C. Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from a traffic stop of the Defendant's vehicle, following which an officer arrested him for DUI.

## A. Motion to Suppress

The Defendant filed a motion to suppress evidence found as a result of the traffic stop. He asserted that the state trooper did not have a sufficient basis upon which to initiate the stop. The trial court held a hearing on the motion to suppress, during which the parties presented the following evidence: Randy McDonald, a Tennessee Highway Patrol trooper, testified that on April 12, 2014, at around 10:56 p.m., he was travelling westbound on Cool Springs Boulevard when he noticed a vehicle in front of him weaving in his lane and crossing the lane divider lines with its right two tires riding on top of the lane divider line.

Trooper McDonald noted that it was a four-lane stretch of road with two lanes westbound and two lanes eastbound divided by a grassy median in the middle. He said that he was in the lefthand lane, closer to the median when he first observed the Defendant's vehicle. The vehicle he observed was in the same lane in front of him. The trooper testified that his attention was drawn to this vehicle because, after it travelled through a traffic light, two of the right side tires crossed over the lane divider, and the vehicle came back and almost touched the fog line on the left side of the lane and then travelled back riding on the divider lines again with its two right tires. On this basis, Trooper McDonald initiated a traffic stop. The State offered a video recording from the trooper's vehicle camera.

In the video, the vehicle is seen travelling with its left two tires near the left fog line. The driver made what appeared to be a quick correction, and the vehicle moved toward the divider lane. The right two tires crossed over the center divider lane. The vehicle swerved within its own lane several times, making rapid corrections within the lane. The vehicle's right tires again rode on the center line. The vehicle initiated a left hand turn using its turn indicator, and turned left. During this turn, the trooper activated the blue emergency lights on his highway patrol car.

After watching the video, Trooper McDonald testified that the vehicle swerved within its own lane of travel and then crossed over the divider line. The vehicle travelled with its wheels on the divider lines for approximately fifteen seconds.

During cross-examination, Trooper McDonald testified that he was unsure of the speed the vehicle was travelling. He said that he determined he should stop the vehicle when it travelled with its tires on the lane divider for an extended period of time. He agreed that there were no other vehicles in the adjacent lane and no car accident resulted from this incident. Trooper McDonald said he stopped the vehicle for failing to maintain its lane of travel.

2

At the conclusion of the hearing, the trial court denied the Defendant's motion to suppress.

## B. Guilty Plea

After the trial court denied his motion to suppress, the Defendant pleaded guilty to DUI and DUI per se. At the guilty plea hearing, the State offered the following facts in support of the Defendant's guilty plea:

> Your Honor, the court heard testimony from Trooper Randy McDonald at a suppression hearing March 23rd of this year, that [the Defendant] was pulled over on April 12, 2014, at 11:00 p.m.
>
> . . . .
>
> If continued, if his testimony continued, Your Honor, Trooper McDonald would have testified that [the Defendant] was the driver of the car that was pulled over, had an alcoholic beverage [odor] about his person, this occurred here in Williamson County. He performed poorly on the field sobriety test and refused a blood test. The trooper obtained a search warrant and obtained his blood which was analyzed by the TBI and came back at .261 grams percent grams of alcohol.

The trial court accepted the Defendant's plea of guilt and merged the Defendant's convictions. The trial court imposed the sentence agreed to by the parties: eleven months and twenty-nine days, to be served on probation after the service of seven days in confinement. Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2), the Defendant reserved the following certified question of law:

> Whether the trial court erred in denying appellant's motion to suppress in ruling that Trooper R. McDonald's basis for the stop, Failure to Maintain Lane of Travel, did not amount to an illegal seizure by law enforcement pursuant to reasonable suspicion that the Defendant had committed a minor traffic violation.

## II. Analysis
## A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine

whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this Court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This Court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This Court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)). Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment or conviction occurring as the result of a guilty plea. *State v. Long*, 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;
>
> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *State v. Preston*, our Supreme Court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)." 759 S.W.2d 647, 650 (Tenn. 1988). First, the final order or judgment appealed from must contain a statement of the dispositive question of law reserved for review. *Id.* The question must clearly identify the scope and limits of the legal issue and must have been passed upon by the trial judge. *Id.* Second, the order must also state that: (1) the certified question was reserved as part of the plea agreement;

(2) the State and the trial judge consented to the reservation; and (3) both the State and the trial judge agreed that the question is dispositive of the case. *Id*. Third, the defendant bears the burden of "reserving, articulating, and identifying the issue" reserved. *State v. Troy Lynn Woodlee*, No. M2008-01100-CCA-R3-CD, 2010 WL 27883, at *2 (Tenn. Crim. App., at Nashville, Jan. 6, 2010), *perm. app. denied* (Tenn. May 20, 2010) (citing *Preston*, 937 S.W.2d at 838). Failure to properly reserve a certified question of law pursuant to the requirements stated in *Preston* will result in the dismissal of the appeal. *Woodlee*, 2010 WL 27883, at *2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)). The importance of complying with the *Preston* requirements has been reiterated by our Supreme Court in *State v. Armstrong*, 126 S.W.3d 908, 913 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37.

In the case under submission, the Defendant's issue on appeal meets these requirements: he pleaded guilty; the judgment form referenced the appeal; and the addendum to the judgment form listed the question that the Defendant maintains on appeal. The question included in the addendum attached to the Defendant's judgment form is stated so as to identify clearly the scope and limits of the legal issue reserved and is dispositive of the case. Thus, we conclude that the issue is properly before this Court.

## B. Legality of Search and Seizure

The Defendant argues that the trial court abused its discretion when it denied his motion to suppress because Trooper McDonald did not have a reasonable suspicion to stop him for DUI based upon the Defendant's failure to maintain his lane of travel. The State counters that the trooper had probable cause to stop the Defendant for failing to maintain his lane of travel, and, at that time, he properly investigated further and determined the Defendant was intoxicated.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact,

5

is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

Our Supreme Court has stated:

> The Fourth Amendment to the United States Constitution proscribes "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause . . . particularly describing . . . the persons . . . to be seized." Likewise, Article I, Section 7 of the Tennessee Constitution states that "the people shall be secure in their persons . . . from unreasonable searches and seizures." Because traffic stops constitute seizures entitling a vehicle's occupants to the full protections of the United States and Tennessee Constitutions, *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993), the authorities must act reasonably when initiating a traffic stop.

> The United States Supreme Court has interpreted this requirement to mean that the authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop. *Whren v. United States*, 517 U.S. at 810, 116 S. Ct. 1769; *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L.Ed.2d 660 (1979); *accord State v. Vineyard*, 958 S.W.2d 730, 736 (Tenn. 1997).

*State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010).

There are three levels of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause in order to be valid; (2) a brief investigatory detention, which must be supported by a reasonable suspicion, based upon specific and articulable facts, of criminal wrong-doing; and (3) a brief "encounter" which requires no objective justification. *State v. Day*, 263 S.W.3d 891, 901 (Tenn. 2008). Moreover, the distinction between a stop based on probable cause and a stop based on reasonable suspicion is not simply academic. Reasonable suspicion will support only a brief, investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 27-29 (1968); *see also United States v. Bentley*, 795 F.3d 630, 633 (7th Cir. 2015) (noting the necessity to "distinguish between stops based on reasonable suspicion and those based on probable cause [because] [t]he latter are not subject to the scope and duration restrictions of *Terry*"); *State v. Troxell*, 78

6

S.W.3d 866, 871 (Tenn. 2002) (recognizing that investigative stops must be "reasonably related in scope to the circumstances which justified the interference in the first place" and that the stop "must be temporary and last no longer than necessary to effectuate the purpose of the stop" (*quoting Terry*, 392 U.S. at 20, and *Florida v. Royer*, 460 U.S. 491 (1983)) (internal quotation marks omitted)).

A reasonable basis for a stop is something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. "The evaluation [of reasonable suspicion] is made from the perspective of the reasonable officer, not the reasonable person." *State v. Smith*, -- S.W.3d --, 2016 WL 537119, at *4 (Tenn. Feb. 16, 2016) (citing *United States v. Quintana–Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003); and *United States v. Valdez*, 147 Fed. Appx. 591, 596 (6th Cir. 2005)). Moreover, because a court reviews the validity of a stop from a purely objective perspective, the officer's subjective state of mind is irrelevant, *see Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006), and the court may consider relevant circumstances demonstrated by the proof even if not articulated by the testifying officer as reasons for the stop, *see Smith*, -- S.W.3d --, 2016 WL 537119, at *4 (citing *City of Highland Park v. Kane*, 372 Ill. Dec. 26, 991 N.E.2d 333, 338 (Ill. App. Ct. 2013) (recognizing that, "[i]n analyzing whether a stop was proper, a court is not limited to bases cited by the officer for effectuating the stop" (citing *Wren*, 517 U.S. at 813)); *see also State v. Huddleston*, 924 S.W.2d 666, 676 (Tenn. 1996) (recognizing that an officer's subjective belief that he did not have enough evidence to obtain a warrant is irrelevant to whether or not probable cause actually existed")). Additionally, if the defendant attempts to suppress evidence collected during the challenged stop, the state is not limited in its opposing argument to the grounds ostensibly relied upon by the officer if the proof supports the stop on other grounds. *Smith*, --S.W.3d --, 2016 WL 537119, at *4 (citing *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)).

Furthermore, it is well settled that: "Probable cause"—the higher standard necessary to make a full-scale arrest—means more than bare suspicion: "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160 (1949) (quoting *Carroll v. United States*, 267 U.S. 132 (1925)). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Goines v. State*, 572 S.W.2d 644, 647 (Tenn. 1978) (quoting *Beck v. Ohio*, 379 U.S. 89 (1964)). "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and

prudent men, not legal technicians, act." *Brinegar*, 338 U.S. at 175; *See Day*, 263 S.W.3d at 902-03.

The Defendant in the case under submission points to numerous cases, some of which he analogizes and some of which he distinguishes, to support his contention that the officer in this case did not have reasonable suspicion to stop his vehicle and investigate further. Officer McDonald testified that he stopped the Defendant based upon the Defendant's failure to maintain his lane. Tennessee Code Annotated section 55-8-123(1) provides as follows:

Driving on roadways laned for traffic.

Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply:

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety;

The General Assembly has criminalized a violation of Tennessee Code Annotated section 55-8-123(1) as a Class C misdemeanor. T.C.A. § 55-8-103. In this case, the Class C misdemeanor is punishable by imprisonment of not greater than thirty (30) days or a fine not to exceed fifty dollars ($50.00), or both. T.C.A. § 40-35-111(e)(3). We note this case does not address the issue of whether Defendant's driving that was observed by the trooper provided probable cause or reasonable suspicion that Defendant was driving under the influence of intoxicants in violation of Tennessee Code Annotated section 55-10-401, even though that is the offense to which the Defendant pleaded guilty as a result of the stop, because the officer stated that he stopped the Defendant based upon his failure to maintain his lane.

There are several cases from this Court, both published and unpublished, that address similar factual scenarios. After the Defendant in this case filed his brief, however, the Tennessee Supreme Court addressed this issue in *State v. Smith*, -- S.W.3d --, 2016 WL 537119 (Tenn. Feb. 16, 2016). The Tennessee Supreme Court summarized the factual scenario in *Smith* as:

Trooper Chuck Achinger of the Tennessee Highway Patrol testified that, at approximately 3:00 a.m. on December 6, 2012, he was travelling north on I–65 in Williamson County, Tennessee. As he neared the 72 mile marker, he noticed a car in front of him "drift over towards the shoulder" as

8

it entered a "big swooping curve." He then observed the vehicle cross the fog line "by less than six inches, probably." As the car came out of the curve, "it corrected itself back into its lane, and then it drifted back over to the right and almost went all the way over the fog line again. It corrected itself. And then, again, it went back over and just barely touched the fog line again." Trooper Achinger clarified that, when the car crossed the fog line, both tires on the right side of the car crossed the line "[e]ntirely." Trooper Achinger observed this driving behavior over the course of four to five tenths of a mile. He acknowledged that the [d]efendant's driving did not endanger any other vehicles.

*Id.* at *1. Unlike the case under submission, the trooper's video did not show defendant Smith's crossing of the fog line, however the trial court accredited the trooper's testimony.

In *Smith*, our Supreme Court analyzed and discussed case law and statutes from other states criminalizing the failure to maintain one's lane. *Id.* at *5-8. The Court concluded that:

> Therefore, based on the plain language of the statute, and guided by our concern for public safety, we hold that Section 123(1) is violated when a motorist strays outside of [his or] her lane of travel when either (1) it is practicable for [him or] her to remain in her lane of travel or (2) [he or] she fails to first ascertain that the maneuver can be made with safety. *See* Tenn. Code Ann. § 55-8-123(1). Thus, even minor lane excursions may establish a violation of Section 123(1) whether or not the excursion creates a specific, observed danger.

*Id.* at *9-10. The *Smith* Court cautioned:

> We caution that in many cases it will not be possible for an observing officer to discern either the reason for a driver's leaving her lane of travel or whether she first ascertained the safety of the maneuver. In those cases, the officer would have to investigate further in order to determine whether the driving maneuver violated Section 123(1). *See Hackett*, 361 Ill. Dec. 536, 971 N.E.2d at 1066 (holding that an investigatory stop made after officer observed motorist deviating from lane for no apparent reason "allows the officer to inquire further into the reason for the lane deviation, either by inquiry of the driver or verification of the condition of the roadway where the deviation occurred"). In such cases, the officer would not have probable cause to stop the motorist but might have

9

sufficient reasonable suspicion to do so. *See id.* (holding that officer was justified in making an investigatory traffic stop after observing motorist twice deviate from his own lane of travel to an adjacent lane of travel for no obvious reason).

*Id.* at \*10.

Ultimately, considering the totality of the circumstances, the *Smith* Court concluded that the officer stopping defendant Smith had a reasonable suspicion, supported by specific and articulable facts, that defendant Smith violated Section 123(1) when she crossed the fog line and failed to remain entirely within her lane of travel. *Id.* at 13. The officer was therefore justified in stopping defendant Smith to investigate further the reasons for her leaving her lane of travel. *Id.* This holding accords with the Tennessee Supreme Court's holding *in State v. Brotherton*, which approved a stop solely for a traffic violation based on "probable cause" or "reasonable suspicion," even when it is clear that a Tennessee court would not have found the driver guilty of the traffic violation. 323 S.W.3d 866, 871 (Tenn. 2010) (citing *United States v. Johnson*, 242 F.3d 707, 709-10 (6th Cir. 2001))

Using *Smith* as a guide, we conclude that, in the case under submission, considering the totality of the circumstances, Trooper McDonald had a reasonable suspicion, supported by specific and articulable facts, that the Defendant had violated Tennessee Code Annotated section 55-8-123(1). Trooper McDonald observed the Defendant driving at approximately 11:00 at night, a time at which a driver may be more likely to be fatigued or impaired. Such circumstances increase the likelihood of accidental lane excursions. The Defendant was driving on a stretch of road that, from the video, has clearly marked, wide lanes. Third, the video recording reveals that the weather and the roadway were dry. Fourth, the video confirmed Trooper McDonald's testimony that the Defendant's right tires crossed the lane divider, that he veered back and his left tires touched and crossed the fog line, and then that he again veered so that his right tires crossed the lane divider. Fifth, there is no proof in the record indicating that the Defendant's lane excursion was preceded by a signal indicating his intention to leave his lane or that it was followed by a lessening in speed indicating his intention to pull onto the shoulder and stop. Finally, the Defendant's travel within his own lane included multiple drifts toward either side of his lane followed by a jerky or quick movement for correction. Again, these circumstances are indicative of an inadvertent lane excursion, and Trooper McDonald was therefore justified in stopping the Defendant to investigate further the reasons for the Defendant leaving his lane of travel. The trial court did not err when it denied the Defendant's motion to suppress evidence obtained as a result of the traffic stop.

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE