# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT JACKSON
### January 9, 2019 Session

## STATE OF TENNESSEE v. DAVID LEVON BYERS, JR.

**Appeal from the Circuit Court for Fayette County**
**No. 16-CR-189     J. Weber McCraw, Judge**

_____

### No. W2018-01247-CCA-R3-CD
_____

Following a bench trial, the Defendant-Appellant, David Levon Byers, Jr., was convicted of possession of a weapon by a convicted felon, possession of drug paraphernalia, and "improper lane change" in violation of Tenn. Code Ann. § 55-8-123, for which he received an effective sentence of four-years to be served on supervised probation. Prior to trial, the Defendant filed a motion to suppress challenging the constitutionality of the traffic stop, which was denied by the trial court. The sole issue presented in this appeal as of right is whether the trial court erred in denying his motion to suppress. Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

David W. Camp and Alexander D. Camp, Jackson, Tennessee, for the Defendant-Appellant, David Levon Byers, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Falen Chandler, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Prior to trial, the Defendant filed a motion to suppress evidence seized from the traffic stop of his vehicle, arguing that it was without reasonable suspicion or probable cause. On March 6, 2017, the trial court conducted a hearing on the motion to suppress. Trooper Owen Greer of the Tennessee Highway Patrol testified that on May 12, 2016, he observed the Defendant in a black commercial vehicle pulling a white enclosed van trailer driving eastbound on I-40 in Fayette County, Tennessee. As Trooper Greer

approached the vehicle, he observed it "cross over the fog line one time and, as [he] was driving beside the vehicle, it crossed into [his] lane and then back into his lane again and it also crossed the fog line once more." Trooper Greer then initiated a traffic stop of the vehicle based on it having crossed the fog line twice and the centerline of travel once. The trooper approached the vehicle from the passenger side and observed the driver, the Defendant, and a passenger inside vehicle. The trooper asked the Defendant to step outside of the vehicle and conducted a level two inspection for commercial vehicles. This type of inspection involved checking the lights, tire pressure, logbook, bill of laden, travel itinerary, all the passenger and driver information, and the contents of the vehicle. Trooper Greer identified a compact disc of the dash cam recording of the traffic stop, which he narrated for the court. In doing so, Trooper Greer stated

> He's driving on the fog line here, over the fog line there. He's done crossed into my lane here. I proceeded to drive up to see the markings of the vehicle, the DOT number, the name of the company. They're all located on the step there underneath the door.

The disc was subsequently admitted into evidence. Trooper Greer testified that he received consent to search the vehicle from the Defendant several times. After searching the vehicle, he retrieved a .38 revolver above the driver's side sun visor, several rounds of ammunition discovered in a duffle bag, and a glass smoking pipe with crystal meth residue.

On cross-examination, Trooper Greer confirmed that he was a K-9 officer assigned to the Drug Task Force in Memphis, Tennessee, and that patrolling the section of I-40 where the Defendant was stopped was a "daily duty." He affirmed that the video recording of the stop did not record him saying that the vehicle crossed over the emergency line three or four times. He explained that it was not included in the affidavit because he had not watched the video prior to completing the affidavit. He further affirmed that he advised the Defendant of the reason why he was pulled over; however, it was also not recorded because the "outside camera audio did not work on that car." Trooper Greer also agreed that his affidavit erroneously listed a level three search, which required a "paperwork only investigation." Trooper Greer was prompted to ask the Defendant for consent to search the vehicle because the unauthorized passenger, located in the sleeper berth of the vehicle, had a suspended CDL driver's license and was wanted in Tennessee and Georgia. Asked if there was anything the Defendant did which led Trooper Greer to believe that something could be found in the vehicle, Trooper Greer said, "[H]esitation on a couple of the questions standing there at the window and just a slight nervousness." He agreed that he did not include this information in the affidavit.

In denying the motion to suppress, the trial court provided, in relevant part, as follows:[1]

> The Court did notice in the video that the truck crossed the line I counted three or four times within a short period. It goes beyond just simply going across the fog line in the emergency lane. It did travel several seconds there and then it came all the way back across the middle line or the other lane of traffic line and then it went back again. So this is more than just drifting over the fog line, so the Court does find that there was a reasonable basis for the stop. The Court does recognize sometimes I don't feel as strongly about it being a good stop but this appeared to be a good basis for it within a short period. The Court also finds consent was given by [the Defendant] for the search. There is also additional testimony that the passenger had an arrest warrant and the [D]efendant admitted that he had a handgun, is what I thought I understood in the testimony, but he was asked several times, consent was given. He was not coerced. So the Court is going to deny the motion to suppress.

Although it is unnecessary to expound further on the facts of this case, we note that the proof at trial was substantially the same as the proof at the motion to suppress. The Defendant was convicted as charged and received an effective four-year sentence, to be served on supervised probation. He filed a motion for new trial, again challenging the validity of the stop, which was subsequently denied by the trial court. The Defendant filed this timely appeal and is properly before this court.

## ANALYSIS

The Defendant argues the stop of his vehicle was without reasonable suspicion or probable cause. He relies exclusively upon United States v. Freeman, 209 F.3d 464 (6th Cir. 2000), for the proposition that the stop of his vehicle was unlawful. In response, the State contends that the stop was supported by reasonable suspicion based on State v. Smith, 484 S.W.3d 393 (Tenn. 2016), which the State argues is directly on point. The State further submits that United States v. Freeman, is distinguishable from the instant case, primarily because the Sixth Circuit did not analyze whether the traffic stop in that case was supported by reasonable suspicion. For the reasons that follow, we agree with the State.

The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). It is well

---

[1] The order denying the motion to suppress is not included in the record on appeal.

established that "a trial court's finding of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The Tennessee Supreme Court explained this standard in Odom:

> Questions of credibility of the witness, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Id. However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The defendant bears the burden of showing that the evidence preponderates against the trial court's findings.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. A warrantless search or seizure is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). The stop of a vehicle and the detention of individuals during the stop amounts to a seizure for purposes of both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution and is thus subject to the reasonableness requirement. Whren v. United States, 517 U.S. 806, 809-10 (1996); State v. Brotherton, 323 S.W.3d 866, 870 (Tenn. 2010). Law enforcement authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation occurred when they initiate a traffic stop without a warrant. Id.

Our courts have recognized that probable cause is a "practical, nontechnical" concept. Smith, 484 S.W.3d at 400 (citing State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). "[P]robable cause exists when 'at the time of the [seizure], the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was

committing an offense.'" Id. (citing State v. Dotson, 450 S.W.3d 1, 50 (Tenn. 2014) (quoting State v. Echols, 382 S.W.3d 266, 277-78 (Tenn. 2012)).

Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). A mere "inchoate and unparticularized suspicion or 'hunch'" is not enough to generate reasonable suspicion. Id. The Tennessee Supreme Court has defined reasonable suspicion as a "particularized and objective basis for suspecting the subject of a stop of criminal activity." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Ornelas v. Unites States, 517 U.S. 690, 696 (1996)). "The evaluation [of reasonable suspicion] is made from the perspective of the reasonable officer, not the reasonable person." Smith, 484 S.W.3d at 402 (citing United States v. Quintana-Garcia, 343 F.3d 1266, 1270 (10th Cir. 2003)); see also United States v. Valdez, 147 Fed. Appx. 591, 596 (6th Cir. 2005). Moreover, "because a court reviews the validity of a stop from a purely objective perspective, the officer's subjective state of mind is irrelevant, see Brigham City, Utah v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 164 L.Ed.2d 650 (2006), and the court may consider relevant circumstances demonstrated by the proof even if not articulated by the testifying officer as reasons for the stop[.]" Id. at 402. Finally, "[]the distinction between a stop based on probable cause and a stop based on reasonable suspicion is not simply academic. . . . [R]easonable suspicion will support only a brief, investigatory stop." Id. at 409.

The traffic statute at issue in this case, Tennessee Code Annotated section 55-8-123, provides, in pertinent part, as follows:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply: (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]

Tenn. Code Ann. § 55-8-123(1) (2012). A violation of this statute has been criminalized as a Class C misdemeanor. Tenn. Code Ann. § 55-8-103. In State v. Smith, the Tennessee Supreme Court analyzed the constitutionality of a traffic stop based on Section 55-8-123(1), and interpreted the language "as nearly as practicable" to mean that motorists "must not leave [their] lane any more than is made necessary by the circumstance requiring the lane excursion." 484 S.W.3d at 409. The court determined that officers usually would not be able to ascertain a motorist's reasoning for the lane excursion, but would have reasonable suspicion to investigate further. Id. at 410. The court rejected the bright-line rule that probable cause is always established by a lane

- 5 -

excursion, id.; however, our supreme court "recognize[d] that some lane excursions may be so egregious that they will support probable cause to stop the motorist." Id. at 411 n.13.

The Defendant does not contest with any specificity the validity of the traffic stop. Instead, he relies generally upon United States v. Freeman, 209 F.3d 464 (6th Cir. 2000). In Freeman, the Sixth Circuit concluded that probable cause was lacking under Section 55-8-123(1) where a top-heavy motor home "partially weav[ed] into the emergency lane for a few feet" for what amounted to "an instant in time" as it "was rounding a curve in the road" on a high wind day. Id. at 466-68. Significantly, in Smith, our supreme court cited Freeman with approval, and noted that "if the motorist is driving a large vehicle with a high profile, such as an RV, and the weather includes high velocity wind gusts, minor crossings of lane lines occurring in conjunction with the wind gusts may satisfy the 'as nearly as practicable' language of the statute and may not constitute a violation of Section 123(1)." Smith, 484 S.W.3d at 410 (citing Freeman, 209 F.3d at 467-68) (holding that officer did not have probable cause to stop top-heavy motor home for violating Section 123(1) where motor home crossed fog line for one-third of a second during high winds); United States v. Gregory, 79 F.3d 973, 978 (10th Cir. 1996) (holding that officer did not have grounds to stop U-Haul rental truck under Utah's version of Section 123(1) because "[t]he road was winding, the terrain mountainous and the weather condition was windy")). The Court further explained that "[s]uch lane excursions that are not caused by the danger of driver inattention and are not within the scope of the driving conduct prohibited by Section 123(1)." Smith, 484 S.W.3d at 410.

Based upon our review of the suppression hearing and the video of the traffic stop, the record does not preponderate against the findings of the trial court. Here, the trooper testified that he observed the Defendant's vehicle cross the fog line twice and the centerline of travel once. The video corroborates the trooper's testimony. There was no direct testimony concerning the weather conditions; however, the video does not show that weather conditions impacted the Defendant's driving ability on the day of the stop and the stop occurred on a flat interstate highway. Under these circumstances, the trooper had reasonable suspicion to stop the Defendant's vehicle and to investigate further in order to determine whether the driving maneuver violated Section 55-8-123(1).

Because reasonable suspicion will support only a brief, investigatory stop, see Terry, 392 U.S. at 27-29, we must also determine whether the subsequent detention and search of the Defendant exceeded the scope of a lawful traffic stop for failure to maintain his lane. In this vein, we recognize that "a law enforcement officer making a valid traffic stop must not prolong the stop for longer than necessary to process the traffic violation without having some reasonable suspicion of other criminal activity sufficient to warrant prolonging the stop." State v. Harris, 280 S.W.3d 832, 842 (Tenn. Crim. App. 2008).

The duration of the stop must be "'temporary and last no longer than necessary to effectuate the purpose of the stop.'" State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). A traffic stop may become unreasonable "'if the time, manner or scope of the investigation exceeds the proper parameters.'" Id. (quoting United States v. Childs, 256 F.3d 559, 564 (7th Cir. 2001)). An officer's conduct during an investigative stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. The proper inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly during the detention. Troxell, 78 S.W.3d at 871 (citing State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998)). Here, we are compelled to note that the Defendant did not specifically argue before the trial court or on appeal that the search of his vehicle exceeded the scope of the initial stop. Consequently, the record was not developed with this type of analysis in mind. Nevertheless, the record does reflect that within twelve minutes of when the trooper initiated his blue lights, the trooper's computer check returned a warrant for the passenger's arrest. Within two minutes of the trooper receiving the warrant information about the passenger, the Defendant provided consent to search the vehicle. Under these circumstances, we are unable to conclude that the detention and subsequent search of the Defendant's vehicle exceeded the purpose of the initial stop. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress, and the Defendant is not entitled to relief.

## CONCLUSION

Based on the above reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE